IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**Sheila Turner,**

       Plaintiff,

              Jury Trial Requested

**Louis DeJoy,**
**Postmaster General, United States Postal Service;**
**United States Postal Service;**
**Sandra Ferguson, and Kimberly Freeman,**

       Defendants.

### Complaint

The plaintiff, Sheila Turner ("Plaintiff" or "Turner"), by and through her attorney, brings claims against the defendants, Louis DeJoy, Postmaster General, United States Postal Service and the United States Postal Service (jointly "USPS"), Sandra Ferguson ("Ferguson") and Kimberly Freeman ("Freeman") (collectively "Defendants") for retaliation in violation of the Fair Labor Standards Act ("FLSA"), against USPS for discrimination and retaliation in violation of the Americans with Disabilities Act, and against USPS for discrimination in violation of the Age Discrimination in Employment Act.

### Jurisdiction and Venue

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§451, 1331, 1343, and 1367; 29 U.S.C. § 216; 29 U.S.C. § 633a(c); and 42 U.S.C. § 2000e-5.

1

2. On or about September 27, 2019, Plaintiff initiated a formal complaint with USPS alleging discrimination based on disability, age, and sex, as well as retaliation for having made an accommodation request. See Exhibit A, attached.

3. On March 25, 2020, USPS issued a final agency decision making a finding of no discrimination. See Ex. B, attached.

4. On June 3, 2021, the Equal Employment Opportunity Commission issued a decision denying Turner's appeal of the agency decision and providing notice of her right to file a civil action. See Ex. C, attached. She files the instant action within 90 days of her receipt of that notice.

5. Venue is proper under 28. U.S.C. § 1391(b) and 42 U.S.C. 2000e-5(f)(3) because the unlawful employment practices alleged herein took place in the Northern District of Illinois.

## The Parties

6. Plaintiff is an individual with a disability and over the age of 60. She is a resident of this district and a former long-time employee of USPS.

7. USPS is a federal agency. At all times relevant hereto, USPS has conducted and continues to conduct business in the Northern District of Illinois.

8. At all times relevant hereto, Ferguson was Turner's supervisor, was responsible for the violations alleged herein, and was therefore an "employer" as the term is defined in the FLSA. On information and belief, Ferguson resides in this district.

9. At all times relevant hereto, Freeman was Turner's acting supervisor, was responsible for the violations alleged herein, and was therefore an "employer" as

the term is defined in the FLSA. On information and belief, Freeman resides in this district.

## Facts Common to All Claims

10. Turner began working for USPS in October of 1985. During her 41 years with USPS she served in various roles and received numerous awards and compliments for her hard work, productivity and excellent service. At all times relevant to her claims, Turner worked as a Complaints and Inquiry Clerk in the Chicago Customer Service District.

11. At all times relevant hereto, Turner suffered from carpel tunnel syndrome (bilateral), tenosynovitis of the hand and wrists, and lateral epicondylitis.

12. Turner was able to perform her job commendably despite her disabilities, and prior to 2019 Sandra Ferguson, Turner's supervisor and Consumer and Industry Contact, frequently referred to Turner as her "best employee."

13. Freeman, who was the District Retail Manager, formally served in Ferguson's role in early 2019 while Ferguson was on leave, and subsequently continued to make personnel decisions about Turner in coordination with Ferguson.

   a. Turner's Wage Complaint

14. Turner took preapproved leave pursuant to USPS policy on January 28 and 29 of 2019. Freeman declined to input the annual leave for compensation, thereby denying Turner sixteen hours of pay. She also declined to input four hours of overtime that Turner worked on January 30. Freeman also denied Turner permission to take leave on February 1, 2019.

15. Turner asked Freeman to reverse these denials and requested payment for the overtime hours she worked. Freeman angrily rebuffed Turner's requests, saying

that no one could make her do anything and Turner could go ahead and file a grievance.

16. Acting through her union, Turner filed three Step 2 grievances with the USPS Labor Department of Human Resources in February 2019 alleging that Freeman had failed to credit her for her annual leave, failed to pay her for overtime and failed to allow her 5.5 hours of leave on February 1.

17. As a result, on April 16, 2019 and May 22, 2019, USPS's Labor Department issued determinations that Turner was to be scheduled for her leave and was owed compensation for her unpaid wages. The parties still have a Step 3 complaint pending for the one remaining complaints.

18. Ms. Freeman confirmed knowledge of the April 16 and May 22 determinations. Turner notified Ferguson of the findings in person.

19. Immediately after initiating the grievance process in February of 2019, Freeman and Ferguson began subjecting Turner to hostility and excess scrutiny, such as criticizing her every time she left her desk for a few minutes even while Turner's coworkers routinely and freely took breaks.

b. Turner's Accommodations Request

20. On April 25, 2019, Turner submitted a request for disability accommodations. Although she had submitted similar requests in the past, this was the first request submitted to Freeman.

21. In the documentation she submitted along with the request for accommodations, Turner's physician specified that her restrictions were permanent, that she could

5

not lift more than five pounds, could not perform forceful hand grasps, could not engage in repetitive work using her hands and arms, and should be permitted a ten-minute break every hour. She also asked for dictation software to minimize typing.

22. USPS never provided Turner with usable and compatible dictation software. Turner notified her managers of the software's limitations and they neither provided compatible software nor suggested reasonable alternatives.

c. Denial of Overtime Opportunities

23. On April 30, 2019 Freeman and Ferguson informed Turner that she would no longer be allowed to work overtime on the workroom floor due to physical restrictions identified on her April 25 quarterly medical report, through which she had requested accommodations.

24. In mid-2019, as she was leaving work one day, Turner overheard Ferguson and Freeman talking and laughing in the office. One of them commented, in reference to Turner, "We're not gonna let her make all that money when she's not even doing anything."

25. Turner had been performing overtime on the workroom floor without issue since October 2018 and did not seek an accommodation that necessitated relief from overtime. Turner signed up for the "Overtime Desired" list in the same manner she had done in the past, and in the same manner as other employees who were granted overtime.

6

26. Freeman and Ferguson persisted in the denial of overtime even though Turner explained to them that she did not need accommodations for the type of work performed during overtime on the workroom floor.

27. Freeman and Ferguson persisted in the denial of overtime even after receiving emails from two workroom supervisors, Michele Myles and Darian Jeter identifying specific overtime tasks Turner could perform while remaining within her medical restrictions. Freeman and Ferguson also disregarded a May 8 medical report from Turner's physician explicitly stating that Turner was cleared to perform overtime work.

28. Turner requested meetings with the Marketing Division manager and the Chicago District Manager to discuss these denials of overtime opportunities. The Chicago District Manager never scheduled the requested meetings. The Marketing Division manager simply referred Turner back to Ferguson and Freeman.

29. USPS prohibited Turner from working overtime on the plant workroom floor from April 30, 2019 until she retired on October 3, 2020.

d. Denial of Compensation for Securing Leads

30. Employees of the Chicago Customer Service District can earn extra compensation if they submit "leads" that generate revenue for USPS. To earn a monetary award for a lead, the employee's manager must nominate the employee for a monetary award, and then the District Manager can approve its issuance.

31. In December of 2018, February of 2019, and September of 2019 Turner submitted leads worth $91,182, $26,792, and $26,600, respectively.

32. Turner's manager, Ferguson, did not submit her name for a monetary award, thereby precluding her from receiving an award as a result of her leads.

33. Turner asked Ferguson to submit requests for monetary rewards, but Ferguson refused.

34. USPS Chicago District employees who submitted comparable leads to Turner were issued monetary awards.

35. As a result of the mistreatment described in this complaint, Turner experienced heart palpitations and high blood pressure.

## Count I
## FLSA Retaliation, 29 U.S. Code § 215
## (Defendants USPS, Ferguson and Freeman)

36. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

37. Turner engaged in a protected activity when she filed internal wage and overtime complaints in February of 2019 with USPS through her union.

38. Starting just days after the USPS Labor Department found in Turner's favor in response to one of her complaints, Defendants denied Turner overtime opportunities, which would have permitted her to earn additional compensation.

39. Defendants USPS and Ferguson also denied Plaintiff opportunities for monetary awards in exchange for her submitting "leads" in retaliation for her wage complaints.

40. USPS allowed similarly-situated employees who did not engage in protected activity to work overtime and to receive compensation in exchange for submitting leads.

41. Ferguson's and Freeman's hostility to Turner's wage and hours complaint proximately caused USPS to deny Turner these opportunities.

42. As a result of the practices alleged herein, Plaintiff has suffered lost wages and benefits as well as emotional distress.

## Count II
## ADEA discrimination, 29 U.S.C. § 633a

43. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

44. USPS repeatedly denied Plaintiff opportunities to work overtime because of her age.

45. USPS allowed similarly situated employees who were substantially younger than Plaintiff to work overtime.

46. Freeman sometimes remarked on Turner's age in a manner that suggested discriminatory intent. After April 30, 2019, Freeman commented that she could not treat Turner in the same way she treats other employees because Turner is

"old-school." Also after April 30, 2019, Freeman tried to convince Turner that she should retire.

47. As a result of the practices alleged herein, Plaintiff has suffered lost wages and benefits as well as emotional distress.

## Count III
### ADA Discrimination, 42 U.S.C. § 12112(a)
### (Disparate treatment and failure to accommodate)

48. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

49. Turner suffered from carpel tunnel syndrome, tenosynovitis of the hand and wrists, and lateral epicondylitis. These conditions limited her ability to lift more than five pounds, engage in repetitive activities and perform forceful hand grasps.

50. At all times relevant hereto, Turner was able to perform the essential functions of her job.

51. USPS repeatedly denied Plaintiff opportunities to work overtime because of her disability.

52. USPS allowed similarly situated employees who did not have permanent disabilities to work overtime.

53. USPS also denied Plaintiff her request for a reasonable accommodation in the form of usable dictation software.

54. As a result of the practices alleged herein, Plaintiff has suffered lost wages and benefits as well as emotional distress.

## Count IV
## ADA Retaliation, 42 U.S.C. § 12203

55. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

56. Plaintiff engaged in statutorily protected activity when she requested an accommodation for her disability in April of 2019.

57. USPS repeatedly denied Plaintiff opportunities to work overtime, explicitly because of her accommodation request.

58. Following her accommodation request, USPS, through Ferguson, also denied Plaintiff opportunities for monetary awards in exchange for her submitting "leads."

59. USPS allowed similarly-situated employees who were substantially younger than Plaintiff to work overtime and to receive compensation in exchange for submitting leads.

60. Ferguson's and Freeman's hostility to Turner because of her accommodation request proximately caused USPS to deny Turner overtime opportunities.

61. As a result of the practices alleged herein, Plaintiff has suffered lost wages and benefits as well as emotional distress.

WHEREFORE Plaintiff respectfully requests:

- All wages and benefits she would have received but for the discrimination and retaliation;
- Damages for emotional injuries;
- Prejudgment interest;
- Attorneys' fees and costs; and
- Such other relief as law and justice allow.

## JURY DEMAND

Plaintiff requests trial by jury.

Dated: September 1, 2021

Respectfully submitted,

s/ Rima Kapitan
Atty No. 6286541
Kapitan Law Office, Ltd.
P.O. Box 6779
Chicago, Illinois 60680
Phone: (312) 566-9590
Fax: (312) 566-9591
rima@kapitanlaw.net